Carroll,
June 7, 1949. } No. 3830.

ELIZABETH R. LYNCH *v.* L. B. SPRAGUE, INC.

486

*Thomas J. McIntyre* (by brief and orally), for the plaintiff.

*Charles F. Hartnett* (by brief and orally), for the defendant.

DUNCAN, J. The plaintiff's claim of negligence is based primarily upon the alleged failure of the defendant to equip the ladder and bunk with a hook and eye by means of which the one could be secured to the other. The ladder consisted of four steps, each four inches wide, so constructed 'that the top step rested against the side panel of the upper bunk, which was approximately five and one-half feet high. It was the defendant's practice to attach a screw eye under either end of the side panel of the bunk and a hook to the upper step of the ladder, to "steady the ladder and prevent it from going . . . right or left." Similar ladders were provided for some thirty rooms in the section of the hotel where the accident occurred, and were used both by guests and by the maids who made up the bunks.

The plaintiff took her room on February 16, and used the ladder without incident to enter and leave the bunk each night and morning until the morning of the twenty-first. She testified that as she pre-

pared to leave the bunk that morning, she first made certain that the ladder was steady, and then put her foot on it when "the ladder fell to the floor and [she] fell on the ladder," injuring her elbow and side. Immediately afterward she first discovered a hole at the center of the top step of the ladder "where a hook . . . was supposed to be." She testified that there had been no hook on the ladder during the previous five days, and that she saw no screw eyes on the bunk. She stated that shortly after the accident an employee of the defendant placed a hook on the ladder.

The evidence warranted a finding of negligence on the part of the defendant in failing to take adequate precaution to prevent an accident as a result of the slipping or falling of the ladder. Having installed hooks on the ladders, it could be found to have recognized the need for such precaution. It could also have been found negligent in failing to discover the absence of the hook from the ladder in the plaintiff's room during her occupancy of the room prior to the accident. The plaintiff was a business invitee, to whom the defendant owed the duty to make reasonably safe, or give reasonable warning of, dangerous conditions of which it knew, or which in the exercise of reasonable care it should have discovered. *Jakel* v. *Brockelman*, 91 N. H. 453. See also, *Cable* v. *Donahue & Hamlin, Inc.*, 85 N. H. 258; *Roy* v. *Amoskeag Fabrics*, 93 N. H. 324; Restatement, Torts, *s.* 343. Since there was evidence from which it could be found that the defendant had failed to perform its duty, the issue of its negligence was properly submitted to the jury.

The defendant's motions to withdraw from the jury the various issues raised by the plaintiff's specification were properly denied. The specification charged the defendant with negligence in failing to keep its premises and furnishings in reasonably safe condition, in failing to conduct adequate inspections, in failing to provide the ladder with a hook, and in failing to warn the plaintiff of the risk in use of the ladder without it or to give reasonable instructions for use of the ladder with safety. The evidence warranted submission of these claims to the jury, for their consideration in determining whether the defendant exercised reasonable care under the circumstances. There was evidence from which it could be found that on prior occasions hooks on ladders had pulled out or become bent. The defendant claimed to make daily inspections. The jury could properly find that the hook was absent during the plaintiff's occupancy of the room and that the defendant was negligent in failing to discover this fact; or if it was discovered, in failing to warn the plaintiff of the risk of

using the ladder without a hook, or to instruct her how to do so with safety.

The argument that the absence of the hook was not shown to be causal cannot be adopted. The purpose of the hook was admittedly to steady the ladder, and it could be found that if the ladder had been suitably attached to the bunk the accident would not have happened.

The plaintiff's contributory negligence was not conclusively established. She had had no experience with such a ladder, and as a patron of the hotel was entitled to assume that the ladder was safe for use in the condition in which she found it, in the absence of indication to the contrary. She was under no positive duty to make such an inspection as would have revealed the absence of a hook and the risk resulting therefrom. *Cartier* v. *Hoyt Shoe Co.*, 92 N. H. 263. The question of her due care was for the jury. *Barrett* v. *Company*, 85 N. H. 33. The motions for a nonsuit and a directed verdict were properly denied.

The exceptions relating to evidence present no errors. The plaintiff was permitted to testify on direct examination that she told the defendant's manager that she "fell from the ladder because there wasn't any hook," and that she previously reported to employees in the hotel office "that I had fallen and the reason I had fallen was because there wasn't any hook." The defendant's motions to strike out these answers were denied subject to exception. While it is true that prior consistent statements of a party are inadmissible in the absence of evidence of prior inconsistent statements (*State* v. *Slocinski*, 89 N. H. 262, 264), here the defendant's manager had already testified that he was advised by the "front office" and told by the plaintiff that "she had slipped off a ladder." The plaintiff's testimony in contradiction of this claim was therefore admissible upon the issue of whether the alleged statements were made. 4 Wig. Ev. (3d *ed.*), s. 1126, *pp.* 198, 199.

Testimony of the plaintiff's attending physician, on deposition, concerning the connection between the plaintiff's condition and the accident was sufficiently related to probabilities, and properly received. The defendant excepted to receipt in evidence of certain testimony on deposition by a physician who took x-rays on July 11, 1946 which first revealed the fracture. It appeared that x-rays taken immediately after the accident disclosed no fracture. The physician under whose supervision the latter were taken was called by the defendant and testified that had there been a fracture, it would have shown, and that the position from which the x-rays were taken would not affect the result. In this state of the record, the testimony of the

plaintiff's expert that the failure of the original plates to disclose the fracture was explainable either by "malposition," or obscuring due to "soft tissue swelling" was competent to rebut the defendant's evidence. See Scott, Photographic Evidence, s. 485.

In arguing the point to the jury, plaintiff's counsel made the statement that the defendant's medical witness "contradicted the testimony of our doctor . . . in the interpretation of these x-rays," and was then interrupted by objection by the defendant. The jury was instructed to take its own recollection, and the objection was pursued no further. It was plain that the argument related to the conflicting testimony as to whether the fracture would necessarily appear in the x-rays first taken, and it was not improper, so far as it went. The defendant takes nothing by its exception. *Carr* v. *Orrill*, 86 N. H. 226, 228, 229; *Manning* v. *Company*, 90 N. H. 167, 174; *Weiss* v. *Wasserman*, 91 N. H. 164, 167.

Evidence that hooks had become bent or pulled out of the ladders on prior occasions was clearly competent to show notice to the defendant of the risk that others would do so, and was properly received for that purpose. *Presby* v. *Railway*, 66 N. H. 615, 619; *Shute* v. *Company*, 69 N. H. 210. See also, *Bridges* v. *Company*, 85 N. H. 220; *Howe* v. *Jameson*, 91 N. H. 55. Other exceptions to evidence require no consideration.

Beside the exception previously considered, one other exception to argument was preserved by the defendant. This was to argument relating to the claim that the fracture first disclosed on July 11 may have resulted from injury received after the plaintiff left the hotel. The objection was that "there is no evidence that there was no accident between February and July." Upon the same theory the defendant requested an instruction to the jury that there was no evidence that the plaintiff received a fracture in her fall. Both the argument of counsel and the denial of the request were warranted by the record. The defendant made no affirmative claim that the plaintiff suffered a subsequent injury, and there was no evidence to suggest that she did. On the contrary, the plaintiff testified that she had worked continuously since the accident, and that her complaints following the accident continued into July although the condition of her arm had thereafter gradually improved. There was also evidence that the fracture shown by the x-rays was consistent with the history given, and showed healing within normal limits. A finding that the fracture resulted from the accident was warranted, and the argument was legitimate.

The defendant excepted to the charge to the jury "in so far as it failed to cover . . . and was inconsistent with . . . requests numbered 1 through 34." Such an exception has been held sufficient because of the power of the Presiding Justice to require a more particular specification, *Peppin* v. *Railroad*, 86 N. H. 395, 401; but it is not well calculated to call to his attention the errors claimed by the excepting party. See *Burke* v. *Railroad*, 82 N. H. 350, 361. To the extent that the requested instructions briefed and argued by the defendant were denied, no error was committed.

Requests 2 through 6 would have withdrawn from the jury the issues presented by the plaintiff's specification which the defendant had previously moved to withdraw. For reasons already indicated, they were properly denied.

The eighth request was for an instruction that the burden was on the plaintiff to prove that the defendant's negligence was the sole cause of the accident. This overlooked the probability that its negligence combined with natural forces to produce the injury, and the Court was not required to give it. *Musgrave* v. *Company*, 86 N. H. 375, 378; *Harriman* v. *Moore*, 74 N. H. 277, 282. The instructions on burden of proof and causation were full and adequate. The jury was not instructed that the defendant was liable if its negligence "caused or helped to cause" the accident, but only that it should be found at fault in such case. The instruction was repeatedly given that in the event of such a finding, the conduct of the plaintiff should next be examined, and that if the plaintiff was at fault in any degree, then the verdict must be for the defendant.

The tenth and eleventh requests were properly denied. If because of the defendant's negligence the plaintiff fell "from the ladder" (rather than with it as she testified) the defendant would not be excused. Whether the ladder did or did not fall was not in issue, except as the jury might believe or disbelieve the plaintiff. If the defendant took the position that the plaintiff "slipped off the ladder" without fault on the part of the defendant, whether or not the ladder also fell was immaterial in determining liability. The Trial Court was not obliged to adopt the phraseology of the defendant's requests (*Colby* v. *Lee*, 83 N. H. 303), or to instruct upon matters not in issue (*Colby* v. *Avery*, 93 N. H. 250, 256; *Morin* v. *Champlin*, 93 N. H. 422), or to grant requests which would require decision of the case upon selected portions of the evidence (*Smith* v. *Railroad*, 88 N. H. 430, 435; *Whipple* v. *Railroad*, 90 N. H. 261, 269, 270).

The twelfth request was substantially given, although not in the

requested language. The instructions made it plain that "the lack of a hook . . . was a crucial question," as the defendant urges they should have. The jury was instructed that the plaintiff's claim failed if they found that the ladder was not in the defective condition that "she claimed it to have been in, without a hook"; and that they were not to guess at some cause for the accident other than that claimed by the plaintiff.

The fifteenth request would have required speculation as to what the plaintiff might have done under circumstances which she denied existed, and was properly denied. If it was intended to bear upon the issue of causation, that issue was adequately presented.

A nice determination of how and in what direction the ladder fell was not required (See *Barrett* v. *Company*, 85 N. H. 33, 35), so long as the defendant's negligence was a cause of its falling. The seventeenth request was properly denied.

So also were the eighteenth and nineteenth requests. The jury could find that the ladder was without a hook for five days before the accident, and that the defendant was negligent in failing to discover the fact and to take appropriate precautions. There was no evidence that the hook was missing for any shorter period. Since the defendant claimed to have made daily inspections, if the jury found that the hook was missing as the plaintiff claimed, it followed that it was missing long enough to permit replacement or for other suitable precautions against injury to be taken.

The twenty-fourth request was adequately covered by the charge. The twenty-ninth related to matters not in issue and was correctly refused. *Colby* v. *Avery, supra.*

The thirtieth request, for an instruction that if the jury found "that Robert Tripp did not replace the hook on the ladder as the plaintiff claims" there should be a verdict for the defendant, was objectionable both because calling for a decision upon a selected portion of the evidence, and because the plaintiff's testimony was that the hook was replaced by the "maintenance man," and that she "believed" his name was Mr. Tripp. If she was mistaken as to his identity, or if the hook was not in fact replaced after the accident, the defendant did not thereby become entitled to a verdict.

A review of the charge as a whole indicates that the requested instructions were given, in substance, so far as the defendant was entitled that they should be, and otherwise were properly denied.

There is no indication that the jury acted improperly or was misled, and the exception to the denial of the motion to set aside the verdict

492

is overruled.  *Leavitt* v. *Bacon*, 89 N. H. 383, 388, 389; *Menard* v. *Cashman*, 94 N. H. 428; *Condiles* v. *Waumbec Mills, ante*, 127.

*Judgment on the verdict.*

All concurred.